508 P.2d 1348

**JONES & LAUGHLIN SUPPLY, a division of Jones & Laughlin Steel Corporation, a Pennsylvania corporation, Plaintiff-Appellee,**

v.

**DUGAN PRODUCTION CORPORATION, d/b/a Potwin Supply Company, a New Mexico corporation, and George McDonald, Defendants-Appellants.**

No. 1057.

Court of Appeals of New Mexico.

March 23, 1973.

B. J. Baggett, Baggett & Baggett, Farmington, for defendants-appellants.

Thomas J. Hynes, Farmington, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

Plaintiff filed suit to replevy certain pieces of equipment which were bought at a sheriff's sale by the defendants. The case was tried by the court without a jury and the court awarded judgment in favor of the plaintiff on certain items of equipment, and granted judgment against the plaintiff on certain other pieces of equipment. The defendants appeal and the plaintiff cross-appeals.

We reverse on the defendants' appeal and we dismiss plaintiff's cross-appeal.

The issues are: (1) whether a Whealand rotary table and a Waukesha gasoline engine were included in a certain security agreement executed between Lucky Drilling Company as debtor and plaintiff as secured party and, therefore, whether the court erred in holding that these two items of equipment were subject to a replevin action by the plaintiff; (2) question of jurisdiction on cross-appeal.

(1) *The court erred in granting judgment to plaintiff on the Whealand rotary table and the Waukesha gasoline engine.*

The case arose out of a sheriff's sale in which certain pieces of equipment belonging to Lucky Drilling Company were sold to the defendants. At the sheriff's sale, Dugan Production Corporation d/b/a Potwin Supply Company (defendant) purchased the Whealand rotary table in question. The defendant, George McDonald, purchased the Waukesha gasoline engine. Prior to the sheriff's sale, Lucky Drilling Company mortgaged certain equipment to plaintiff and plaintiff took a security agreement and mortgage on March 31, 1970. A review of the record reveals that this security agreement, together with an unsigned financing statement with exhibits was filed on April 27, 1970 in the office of the County Clerk of San Juan County, New Mexico and on April 24, 1970 in the office of the New Mexico Secretary of State.

Examination of the transcript and the security agreements reveals that the two items in question were not specifically described in the security agreement or in the financing statement or in the exhibits. The exhibits do not list the items in ques-

tion. The financing statement was not signed by the debtor or the secured party as required by § 50A–9–402, N.M.S.A.1953 (Repl.Vol. 8, pt. 1).

The financing statement contains the wording: ". . . all hand tools, drill collars, drill pipe, equipment, accessories, parts,. exchanges, substitutions, additions, accretions, betterments, supplies and items that Debtor may now have or hereafter acquire and use with or as part of such collateral or in connection therewith. . . ." The financing statement further contains the wording: "Debtor's seven complete rotary drilling rigs identified as No. 1 . . ." through "No. 7 . . ., including all components as described on Exhibit 'A' and Exhibit 'B' attached hereto. . . ." This financing statement is not signed by the debtor or the mortgagee.

The security agreement which is signed by all the parties contains the wording: "Debtor's seven rotary drilling rigs Nos. 1 thru 7 including all components as described on Exhibit 'A' (6 pages) and Exhibit 'B' (7 pages), both of which are attached hereto and made a part hereof by this reference, . . ., together with all hand tools, drill collars, drill pipe and together with all equipment, accessories, parts, exchanges, additions, betterments, and appliances that Debtor may hereafter acquire and use with or as a part of the above described goods. . . ." The security agreement does not contain the language "equipment, parts, supplies and items which the Debtor may now have" as does the financing statement.

The undisputed testimony is that the Whealand rotary table in question had been bought with Rig No. 2 originally and prior to the giving of the security agreement had been replaced by a Brewster rotary table. The Whealand rotary table was returned to the parts inventory in the Bloomfield yard and never used again. The inventory mentioned in the Exhibits "A" and "B" lists the Brewster rotary table as a component part of Rig No. 2. In

respect to the V–12 gasoline Waukesha engine, the testimony reveals that this engine was purchased with Rig No. 3 and later on was replaced by V–12 Waukesha diesel engine before the security agreement was executed. The inventory mentioned in the Exhibits "A" and "B" shows the V–12 diesel engine as a component of Rig No. 3 and not the engine in question.

■ Plaintiff would have the two disputed items included within the security agreement on the basis of the "used with" language of the security agreement and on the basis of similar language included in certain of the exhibits referred to in the security agreement. This argument is without merit for two reasons. First, the "used with" phrase in the security agreement applies only to after-acquired property and the disputed items are not in that category. Second, the "used with" phrase in the exhibits applies only to rigs 4 through 7, and the evidence is undisputed that the disputed items were not used with those rigs. The disputed items cannot be included in the security agreement on the basis of "used with" language in the security agreement or the exhibits.

■ The financing statement was not signed pursuant to the provisions of § 50A–9–402, supra. There is a conflict in the language of the security agreement and the financing statement. We follow the reasoning in the Anderson Uniform Commercial Code, Vol. 4 at 124 (2d Ed. 1971) referring to Uniform Commercial Code which states:

"§ 9–110. Sufficiency of Description.
". . .

"§ 9–110:17.—Conflicting descriptions in security agreement and financing statement.

"When there is a conflict between the financing statement on file and the security agreement as to the property involved, the latter prevails for the reason that no security interest can exist in the absence of a security agreement, and therefore a financing statement which

goes beyond the scope of the agreement has no effect to that extent."

Cain v. Country Club Delicatessen of Saybrook, Inc., 25 Conn.Sup. 327, 203 A.2d 441 (1964). Thus, the "may now have" language of the unsigned financing statement does not provide plaintiff with a security interest in the disputed items.

Plaintiff contends the disputed items were included within the security agreement because they were reasonably described therein. See § 50A–9–110, N.M.S.A.1953 (Repl.Vol. 8, pt. 2). Plaintiff contends this reasonable description is provided by "external evidence." This "external evidence" consists of the unsigned financing statement and evidence at trial to the effect that Lucky Drilling Company mortgaged and plaintiff took, pursuant to the mortgage, security on *all* of the equipment of Lucky Drilling Company.

Plaintiff relies on Mountain Credit v. Michiana Lumber & Supply, Inc., 498 P.2d 967 (Colo.1972) and Security Bank & Trust Co. v. Blaze Oil Company, 463 P.2d 495 (Wyo.1970). Neither decision aids plaintiff because in each case the security agreement contained general language which reasonably described the items in dispute. In *Mountain Credit* the disputed item was a log-loader; the security agreement covered logging equipment and machinery used in logging operations. In *Security Bank & Trust Co.* the disputed items were miscellaneous items; the security agreement covered *all* machinery and equipment owned or subsequently acquired. In our case the security agreement does not contain expansive language as does the security agreement in the above two cited cases. Plaintiff's security agreement neither refers to "now owned equipment" or to "all" equipment of Lucky Drilling Company.

■ A security agreement is effective according to *its* terms. Section 50A–9–201, N.M.S.A.1953 (Repl.Vol. 8, pt. 1). A security interest is not effective against third parties unless the debtor has signed a security agreement which contains a description of the collateral. Section 50A–9–203(1)(b), N.M.S.A.1953 (Repl.Vol. 8, pt. 1). The disputed items cannot be included within the security agreement by the "outside evidence" relied on by plaintiff because the disputed items are not described in the security agreement.

It is true, as the trial court found, that the filing of the financing statement was sufficient to put defendants on inquiry as to plaintiff's security interest. This avails plaintiff nothing when the security agreement did not cover the disputed items. We hold that the security agreement did not cover the two disputed items.

(2) *Jurisdictional issue on cross-appeal.*

■ The cross-appeal by the plaintiff was not timely filed as required by Supreme Court Rule 7(2) [§ 21–2–1(7)(2), N.M.S.A.1953 (Repl.Vol. 4)].

"If such notice be served after, or within fifteen [15] days before, expiration of the time within which appeals may be allowed, the party so served may himself have an appeal or writ of error if he shall make application therefor within fifteen [15] days after such service."

The final judgment in this case was entered in San Juan County District Court on May 19, 1972. The defendants' appeal was filed on June 16, 1972, and served by mail on the same day. This service added three days to plaintiff's time. Section 21–1–1(6)(e), N.M.S.A.1953 (Repl.Vol. 4). Plaintiff's notice of cross-appeal was mailed to opposing counsel on July 10, 1972 and filed with the court clerk on July 13, 1972. Plaintiff concedes the notice of cross-appeal was not timely. Daughtrey v. Carpenter, 82 N.M. 173, 477 P.2d 807 (1970).

The cross-appeal is dismissed and the case is remanded to the lower court for proceedings consistent with this opinion with respect to the defendants' appeal.

It is so ordered.

WOOD, C. J., and HERNANDEZ, J., concur.